Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs Alfred Salas and
Gloria Ortega

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED SALAS and GLORIA ORTEGA, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> TOYOTA MOTOR SALES, U.S.A., INC., a California corporation; TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., a Kentucky corporation, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) Violations of California Consumer Legal Remedies Act; <br> (2) Violations of Unfair Competition Law; <br> (3) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act; <br> (4) Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act. and <br> (5) Unjust Enrichment. <br><br> **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiffs Alfred Salas and Gloria Ortega ("Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any Toyota Camry XV50 model vehicles[1] (collectively, "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted and serviced by Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Engineering and Manufacturing North America, Inc. ("Toyota" or "Defendants").

2.      This action arises out of a uniform and widespread defect in the Heating, Ventilation, and Air Conditioning ("HVAC") system of an entire class of automobiles that poses an unreasonable health risk to the driver and passengers of the vehicle.

3.      On information and belief, the HVAC system contains one or more design and/or manufacturing defects that cause, among other problems, emissions of noxious and foul odors from debris and contamination in the HVAC system as well as possible growth of mold (the "HVAC Defect").

4.      Owners of the affected vehicles have a reasonable expectation that normal and routine use of their vehicle's HVAC system will not result in exposure to noxious, foul odors or debris and contamination from their HVAC system.  Exposure to such smells and contamination is hazardous to health and can lead to illness.  The Center for Disease Control and Prevention ("CDC") states that "molds can cause symptoms such as nasal stuffiness, eye irritation, wheezing, or skin irritation.  Some people, such as those with serious allergies to molds, may have more severe reactions . . . [including] fever and shortness of breath."[2]

---

[1] On information and belief, these vehicles include, but are not limited to, the following models: 2012-2015 Toyota Camry.

[2] CDC, "Basic Facts: Molds in the Environment,

5.      Many studies have been published concerning the health and safety risks of mold exposure.  For example, the World Health Organization has stated that "[h]ealthy indoor air is recognized as a basic right" and that mold exposure is "clinically associated with respiratory symptoms, allergies, asthma, and immunological reactions."[3]  In another study, the Environmental Research Center in the Department of Biology at Georgia State University found that the "enclosed environment of the automobile is a microcosm of the indoor environment and is thus potentially susceptible to fungal-mediated allergy problems."[4]

6.      On information and belief, the contamination emanating from the HVAC system grows on a component called the evaporator, located inside the vehicle's dashboard.  As the cold refrigerant passes into the evaporator, it absorbs heat from the air in the passenger compartment and also collects moisture because of condensation on the evaporator's surface.  This moisture, along with pollen, dead insects in the air, and bits of leaves that enter the HVAC system from the outside vents, leads to an environment favorable to the growth of mold and other contaminants.

///

///

///

///

///

///

http://www.cdc.gov/mold/faqs.htm (last visited February 17, 2015).

[3] Marc Danzon, *Foreword* to WHO Guidelines for Indoor Air Quality: Dampness and Mould at xi (Elisabeth Heseltine and Jerome Rosen eds., 2009).

[4] R.B. Simmons et al., *Fungal Colonization of Automobile Air Conditioning Systems*, Journal of Industrial Microbiology & Biotechnology 150 (1997).



7.     On information and belief, the HVAC Defect cannot be resolved by the Defendants' offered "fixes" and thus may require expensive and temporary repairs which do not address the issue, including repeated replacement of air filters or other related components, as well as repeated foam flushes or other related repairs.

8.     Plaintiffs are informed and believe, and based thereon allege, that even where Defendants agree to address consumer complaints of the HVAC system containing mold or emitting noxious and foul odors, Defendants merely replace the defective HVAC components with the same defective components, which never repairs the HVAC Defect as warranted.

9.     On information and belief, prior to sale of the Class Vehicles, Defendants knew, or should have known, about the HVAC Defect through their exclusive knowledge of non-public, internal data about the HVAC Defect, including, without limitation, early consumer complaints about the HVAC Defect to Defendants' dealers who are their agents for vehicle repairs; dealership repair orders; testing conducted in response to those complaints; technical service bulletins ("TSBs") applicable to the identical Class Vehicles; and other

1   internal sources.  Nevertheless, Defendants have actively concealed and failed to

2   disclose this defect to Plaintiffs and Class Members at the time of their purchase

3   or lease of the Class Vehicles and thereafter.

4        10.    Beginning as early as 1997, Defendants knew or should have known

5   that the HVAC system contained one or more design and/or manufacturing

6   defects that cause health risks through pre-sale testing and other internal sources.

7   Nonetheless, Defendants have actively concealed and failed to disclose this

8   defect to Plaintiffs and Class Members at the time of purchase or lease of the

9   Class Vehicles and thereafter and continued to use the defective HVAC system

10  in its vehicles, including the Class Vehicles.

11       11.    Before offering the vehicle for sale, Toyota had already offered

12  prior model year Camry vehicles for sale, which utilized the same, or

13  substantially similar, HVAC systems.  Specifically, nearly two decades ago and

14  as a result of the HVAC Defect, Toyota issued TSB AC002-97 to its dealers in

15  the United States, acknowledging to its dealers that the HVAC system and its

16  associated parts for "all models," including the Camry, were defective and

17  malfunctioning.  The TSB, issued on or about May 9, 1997 and titled "AIR

18  CONDITIONING EVAPORATOR ODOR," informs dealers that a "musty odor

19  may be emitted from the air conditioning system of some vehicles," and one

20  reason for this odor is "[m]icrobial growth in the evaporator, arising from

21  dampness in the evaporator housing where the cooling air flow is dehumidified."

22  On information and belief, the HVAC systems at issue in this TSB are identical

23  or substantially similar to those used in the Class Vehicles.

24       12.    Toyota has acknowledged that the HVAC system used in the Class

25  Vehicles and its attendant problems are the same as the odor issues occurring in

26  other Toyota vehicles.  Specifically, a Toyota technician's training manual

27  published in 2005 indicated that "A/C system odors are a common complaint

28  among users, especially after start up."  It goes on to explain that the odors can

CLASS ACTION COMPLAINT

be caused by "[m]icrobes [i.e., mold] growing on the evaporator surface" that are "small living bacteria . . . carried into the evaporator case [that] grow in the warm, moist environment."  Additionally, it states that there is "**no permanent mechanical repair**" for this issue.  On information and belief, the HVAC systems at issue in this technician's training manual are identical or substantially similar to those used in the Class Vehicles.

13.    More recently, in or around August 2009, Toyota released yet another TSB, TSB-0261-09, to its dealers in the United States, titled "HVAC Odor," once again acknowledging that the HVAC system and its associated parts for 2007-2010 Camry, Camry HV and 2004-2008 Prius vehicles were defective and malfunctioning.  On information and belief, the HVAC systems at issue in this TSB are identical or substantially similar to those used in the Class Vehicles.

14.    Subsequently, in or around September 2013, Toyota released another TSB, TSB 0142-13, to its dealers in the United States, once again acknowledging that the HVAC system and its associated parts for the Class Vehicles were defective and malfunctioning.  This TSB was titled "HVAC Odor Maintenance," and applies to all 2004-2014 Camry vehicles.

15.    On information and belief, despite notice of the defect from numerous consumer complaints and dealership repair orders, Toyota has not recalled the Class Vehicles to repair the HVAC Defect, has not offered their customers a suitable repair or replacement free of charge, and has not offered to reimburse the Class Vehicles' owners and leaseholders in full for the costs they incurred in diagnosing and repairing the HVAC Defect.

16.    Because Toyota will not notify Class Members that the HVAC system is defective, Plaintiffs and Class Members (as well as other passengers) are subjected to serious adverse health risks because of their vehicle.

17.    The alleged HVAC Defect was inherent in each Toyota Camry HVAC system and was present in each Toyota Camry HVAC system at the time

of sale.

18.     Toyota knew about the HVAC Defect present in every Class Vehicle, along with the attendant risks to health and safety, and concealed them from Plaintiffs and Class Members, at the time of sale, lease, and repair and thereafter.

19.     If Plaintiffs and Class Members had known about these defects at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

20.     As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles, including, but not limited to, out-of-pocket costs related to repairs to the HVAC system.  Additionally, as a result of the HVAC Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that repair or replacement of the Class Vehicles' HVAC components will be substantially certain to fail to resolve the odor and/or mold issues and, thus, the HVAC system will require repairs or replacements throughout the life of the vehicles..

**THE PARTIES**

**Plaintiff Alfred Salas**

21.     Plaintiff Alfred Salas is a California citizen who resides in Los Angeles, California.

22.     On or about June 20, 2015, Plaintiff Salas purchased a used 2014 Toyota Camry from South Coast Toyota, an authorized Toyota dealer in Los Angeles County.

23.     Plaintiff Salas purchased his vehicle primarily for personal, family, or household use.  Toyota manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

24.     Passenger safety and reliability were factors in Plaintiff Salas's

decision to purchase his vehicle.  Prior to purchasing his vehicle, Plaintiff Salas reviewed specific features and options for the Camry on Toyota's official website and test drove his Toyota Camry prior to his purchase.

25.   On or about August 29, 2015, with approximately 26,476 miles on the odometer of his 2014 Toyota Camry, Plaintiff Salas brought his vehicle to South Coast Toyota complaining that the HVAC system was not draining following use of the air conditioning and that the vehicle's HVAC system was emitting an odor when the heat or air conditioning was in use.  Toyota's service advisor inspected Plaintiff Salas's vehicle and performed repairs designed to eliminate "bacteria build up" in the HVAC system including running an "O-Zone" machine for several hours and replacing the cabin air filter.

26.   Plaintiff Salas continues to experience the HVAC Defect, including, but not limited to noxious, foul, and moldy odors emitting from his vehicle's HVAC system.

27.   At all times, Plaintiff Salas, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Gloria Ortega**

28.   Plaintiff Gloria Ortega is a California citizen who resides in Long Beach, California.

29.   On or about October 29, 2011, Ms. Ortega purchased a 2012 Toyota Camry from Longo Toyota, an authorized Toyota dealer in Los Angeles County

30.   Plaintiff Ortega purchased her vehicle primarily for personal, family, or household use.  Toyota manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

31.   Passenger safety and reliability were factors in Plaintiff Ortega's decision to purchase her vehicle.  Prior to purchasing her vehicle, Plaintiff Ortega reviewed specific features and options for the Camry on Toyota's official

1   website and test drove her Toyota Camry prior to her purchase.

2      32.   On or about June 21, 2013, with approximately 29,509 miles on the
3   odometer of her 2012 Toyota Camry, Plaintiff Ortega brought her vehicle to
4   AutoNation Toyota Cerritos complaining that the vehicle's HVAC system was
5   emitting an odor when the heat or air conditioning was in use.  Toyota's service
6   advisor inspected Plaintiff Ortega's vehicle and confirmed the presence of the
7   odor when turning on the HVAC system.  However, Toyota's service advisor did
8   not perform any repairs to address Plaintiff Ortega's concern and instead
9   recommended running the HVAC system in non-recirculation mode so the
10  evaporator could dry out the smell.  Following this visit to the dealership's
11  service department, Plaintiff Ortega's vehicle's HVAC system continued to emit
12  the foul odors she complained of whenever she used the heating or air
13  conditioning.

14     33.   In addition, on or about March 28, 2015, with approximately 59,970
15  miles on the odometer of her 2012 Toyota Camry, Plaintiff Ortega brought her
16  vehicle to Cabe Toyota, another authorized Toyota dealer in Long Beach,
17  California.  During this visit, the assigned Toyota service advisor also confirmed
18  the foul odor emitting from the vehicle's HVAC system.  However, the service
19  advisor did not perform any repairs to address Plaintiff Ortega's concern.

20     34.   Plaintiff Ortega continues to experience the HVAC Defect,
21  including, but not limited to noxious, foul, and moldy odors emitting from her
22  vehicle's HVAC system.

23     35.   At all times, Plaintiff Ortega, like all Class Members, has driven her
24  vehicle in a foreseeable manner and in the manner in which it was intended to be
25  used.

26  **Defendants**

27     36.   Defendant Toyota Motor Sales, U.S.A., Inc. is a corporation
28  organized and in existence under the laws of the State of California and

1   registered to do business in the State of California.  Toyota Motor Sales, U.S.A.,

2   Inc.'s Corporate Headquarters is located at 19001 South Western Avenue,

3   Torrance, California 90501.  Toyota Motor Sales, U.S.A., Inc. designs and

4   manufactures motor vehicles, parts, and other products for sale in California, in

5   the United States, and throughout the world.  Toyota Motor Sales, U.S.A., Inc. is

6   the warrantor and distributor of the Class Vehicles in California.

7        37.    Defendant Toyota Motor Engineering and Manufacturing North

8   America, Inc. is a corporation organized and in existence under the laws of the

9   State of Kentucky and registered to do business in the State of California.

10  Toyota Motor Engineering and Manufacturing North America, Inc.'s Corporate

11  Headquarters are located at 25 Atlantic Avenue, Erlanger, Kentucky 41018.

12  Toyota Motor Engineering and Manufacturing North America, Inc. designs and

13  manufactures motor vehicles, parts, and other products for sale in California, in

14  the United States, and throughout the world.

15       38.    At all relevant times, Defendants were and are engaged in the

16  business of designing, manufacturing, constructing, assembling, marketing,

17  distributing, and selling automobiles and motor vehicle components in

18  California, and throughout the United States.

19                              **JURISDICTION**

20       39.    This is a class action.

21       40.    Plaintiff and other class members are citizens of states different

22  from the home state of Defendant Toyota Motor Engineering and Manufacturing

23  North America, Inc.

24       41.    On information and belief, aggregate claims of individual Class

25  Members exceed $5,000,000.00 in value, exclusive of interest and costs.

26       42.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

27                                **VENUE**

28       43.    Toyota, through its business of distributing, selling, and leasing the

1   Class Vehicles, has established sufficient contacts in this district such that

2   personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

3   pursuant to 28 U.S.C. § 1391(a).

4          44.    In addition, a substantial part of the events, omissions, or

5   misrepresentations giving rise to these claims and a substantial part of the

6   property that is the subject of this action are in this district.  In addition,

7   Plaintiffs' Declarations, as required under California Civil Code section 1780(d)

8   but not pursuant to *Erie* and federal procedural rules, which reflect that

9   Defendants are doing business in Los Angeles County, California, are filed

10  concurrently herewith as Exhibit 1.

11         45.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

12                            **FACTUAL ALLEGATIONS**

13         46.    For years, Toyota has designed, manufactured, distributed, sold, and

14  leased the Class Vehicles.  Toyota has sold, directly or indirectly, through

15  dealers and other retail outlets, tens of thousands of Class Vehicles in California,

16  and throughout the United States.

17         47.    The Class Vehicles contain one or more design and/or

18  manufacturing defects that lead to the growth of mold within their HVAC

19  system, leading to emissions of mold and noxious, foul odors.

20         48.    On information and belief, the defect is contained in or around the

21  evaporator located within the HVAC system, which contributes to mold growth

22  from the collection of condensation moisture on the evaporator's surface and the

23  external contaminants provided to the mold from airborne sources via the outside

24  air vents.

25         49.    Dating back to at least 1997, Toyota was aware of the defects of the

26  HVAC system.  Toyota, however, failed and refused to disclose these known

27  defects to consumers.  As a result of this failure, Plaintiffs and Class Members

28  have been damaged.

**The HVAC System Defect Poses an Unreasonable Safety Risk**

50.    Many purchasers and lessees of the Class Vehicles have experienced problems with the HVAC system.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") and posted on the internet demonstrate that the defect is widespread.  The complaints also indicate Defendants' awareness of the problems with the HVAC system and the unreasonable health and safety risks of the HVAC Defect.  The following are some safety complaints relating to the HVAC Defect (spelling and grammar mistakes remain as found in the original):

**NHTSA Complaints** (Safecar.gov, *Search for Complaints* (October 23, 2015), http://www-odi.nhtsa.dot.gov/complaints/):

a.  (2011 Toyota Camry 03/17/2011) TL*THE CONTACT OWNS A 2011 TOYOTA CAMRY LE. THE CONTACT STATED THAT FOR THE LAST THREE MONTHS HE SMELLED AN ODOR INSIDE THE VEHICLE WHEN HE TURNED THE AIR CONDITIONER/HEAT OFF. AFTER A WHILE HE BECAME SICK AND WAS HOSPITALIZED, BUT THEY COULDN'T FIGURE OUT WHAT CAUSED HIM TO BECOME SICK. THE VEHICLE WAS INSPECTED BY A DEALER WHO ADVISED HIM THAT THE FILTER UNDERNEATH THE GLOVE BOX MAY NEED TO BE CHANGED. THEY WERE ABLE TO DUPLICATE THE FAILURE, SMELL THE ODOR AND A TECHNICIAN FROM THE FACTORY WAS NOTIFIED. WHEN THE TECHNICIAN INSPECTED   THE VEHICLE THEY ADVISED HIM THAT THEY COULD NOT LOCATE WHERE THE ODOR WAS CAME FROM; HOWEVER, HE ADDED A SPECIAL FILTER TO THE VEHICLE TO KEEP THE ODOR OUT. WITHIN A FEW WEEKS HE SMELLED THE STRONG ODOR AGAIN. THE FAILURE MILEAGE WAS   APPROXIMATELY   3,000.   THE   VIN   WAS UNAVAILABLE.

b.  (2011 Toyota Camry 08/22/2014) TL* THE CONTACT OWNS A 2011 TOYOTA CAMRY. THE CONTACT NOTICED AN ABNORMAL ODOR IN THE VEHICLE WITHIN A MONTH OF IT BEING PURCHASED.  THERE WAS ALSO WHITE POWDER COMING FROM THE AIR VENTS WHENEVER THE   AIR   CONDITIONER   WAS   ACTIVATED.   THE CONTACT STATED THAT THE ODOR WAS CAUSING HER AND HER FAMILY TO BECOME ILL. THE VEHICLE WAS TAKEN TO THE DEALER MULTIPLE TIMES AND STATED THAT   THE   EVAPORATOR   SYSTEM   CAUSED   THE FAILURE. THE DEALER CHANGED THE EVAPORATOR SYSTEM, BUT THE ODOR PERSISTED. THE CONTACT

CLEANED THE VEHICLE AND MADE SURE ALL THE WINDOWS WERE CLOSED IN ORDER TO ELIMINATE THE FAILURES, BUT WHITE POWDER CONTINUED TO COME THROUGH THE VENTS. THE CONTACT WAS VERY CONCERNED THAT THE WHITE POWDER COULD BE TOXIC, ESPECIALLY SINCE IT WAS MAKING HER AND HER FAMILY NAUSEOUS. THE CONTACT ATTEMPTED TO USE AIR FRESHENERS IN THE VEHICLE, BUT THE ODOR WAS STILL PRESENT. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 80. UPDATED 10/29/14*CN

c. (2012 Toyota Camry 01/29/2015) I HAVE HAD MULTIPLE PROBLEMS WITH MY 2012 CAMRY. PURCHASED IT NEW AND STARTED HAVING PROBLEMS AROUND 3,500 MILES. FIRST, NOTICED A MILDEW SMELL THAT THEY STATED WAS FROM THE AC WHICH THEY FIXED. CONTINUED TO HAVE THE ODOR AND FOUND OUT 15,000 MILES LATER THAT THERE WAS A LEAK IN THE AC THAT WAS PRESSING ON MY AIRBAGS SO THE ENTIRE AIRBAG SYSTEM NEEDED TO BE REPLACED.

d. (2012 Toyota Camry 08/02/2014) I DROVE THIS 2012 CAMRY ON THE HIGH WAY TO NASHVILLE TN FOR 8 DAYS VOCATION STARTED 28 JUNE 2014, LOT OF WATER COMING OUT FROM CARPET, HAD TO STOP AND CLEAN WATER IN EVERY COUPLE HOURS(MY HAND WAS INJURED WHEN CLEANING UP WATER). AFTER I ARRIVED A HOTEL, I SEARCHED ON THE INTERNET AND FOUND OUT THAT TOYOTA HAD A RECALL IN DEC 2013 ON THIS A/C WATER LEAK, IT CAN CAUSE "AIRBAG WARNING LIGHT", ELECTRONIC POWER STEERING LIGHT", OR OTHER PROBLEMS. WE ARE VERY WORRIED ABOUT CAR MAY CAUSE ACCIDENT IN THE WHOLE VOCATION. ------ AFTER BACK TO ROCHESTER NY, CALLED TOYOTA AND THEY TOLD ME GO TO TOYOTA SERVICE TO REPAIR THIS PROBLEM; SO I WENT TO HENRIETTA NY TOYOTA SERVICE AND TOLD THEM A/C WATER LEAK, THEY SAID THEY WILL FIX THAT, ON THE SERVICE REPORT PRINTED:" CUSTOMER STATES THERE IS A WATER LEAK", "WORK PERFORMED BY XXXX", "CLEANED A/C DRAIN". BUT THE MANAGER LIED TO ME, HE SAID THERE IS NO RECALL. ------ NOT SURE IF IT IS TOTALLY FIXED, CAR STILL VERY MOIST, SMELL IS BAD, EVEN AFTER OPEN CAR'S 4 DOORS, PUT THE CARPET BASK IN THE SUN FOR FEW DAYS. ------ YESTERDAY, I FOUND ANOTHER TOYOTA SERVICE REPORT AND RECALL LETTER FROM TOYOTA ON 12/28/2013, AND THIS REPORT SHOWS THEY "PERFORMED WORK BY XXXX." . I TOTALLY FORGOT THIS CAR RECALLED AND ALREADY PERFORMED THE "FIX" FOR A/C WATER LEAK PROBLEM, OBVIOUSLY, TOYOTA SERVICE DID NOT FIX THIS PROBLEM AND THEY LIED TO ME. ------ THIS CAMRY HAS DAMAGE UNDER CARPET BECAUSE OF WATER LEAK, IT MAY

CAUSE SOME ELECTRIC CIRCUITS PROBLEMS IN THE FUTURE, I DON'T WANT TO BE WORRY EVERYDAY, SO I DON'T WANT THIS CAR ANY MORE (THE LEASE TERM WILL END IN ONE MORE YEAR AND A MONTH, I PAID $3000 DOWN PAYMENT FOR 3 YEAR LEASE, ALSO EVERY MONTH PAYMENT). WHAT IS MY CHOICE? ------ THANKS!

e. (2012 Toyota Camry 05/17/2014) FOR THE PAST SEVERAL MONTHS MY 2012 CAMRY A/C UNIT RELEASES A FOUL MILDEW ORDER. IN-CABIN FILTER AS WELL AS OZONE DEPLETION SPRAY WAS COMPLETED TWICE OVER THE SPAN OF ONE WEEK AT CROWN TOYOTA, HOWEVER THE FOUL SMELL SHORTLY REAPPEARS WHEN THE CAR IS TURNED ON. *JS

f. (2012 Toyota Camry 05/02/2014) . . . A/.C HAVE BAD SMELL WHEN I TURN OFF THE A/C LEAK LOTS OF WATER,WHEN I STOP AND TOOK OFF THE CAR SKID AND A LIGHT ABS LIGHT ON THE PANEL.I SPOKE TO THE MGR AND HE TOLL ME WAS NORMAL WHEN A/C OFF OPEN THE OUTSIDE AIR TO THE SMELL GO AWAY

g. (2012 Toyota Camry 01/02/2014) P/O RESPONSE LTR TO TOYOTA CORP. RE 2012 CAMRYDATE: DECEMBER 26, 2013 - ...FURTHERMORE,MY BROTHER AND I HAVE STRESSED TO EVERYONE WE HAVE SPOKEN WITH SINCE OUR FIRST CONTACT ON DEC16, 2013 WITH TOYOTA REGARDING THESE DANGEROUS MECHANICAL PROBLEMS I.E., THE UNINTENDED ACCELERATION, STEERING PULLING TO THE RIGHT AS WELL AS THE OFFENSIVE ODOR THAT OCCURS WHEN THE AC IS TURNED ON.

h. (2013 Toyota Camry 01/05/2015) ANYTIME DURING WARM WEATHER WHEN THE AIR CONDITIONER HAS BEEN/IS BEING USED THERE IS A DISGUSTING FOUL MILDEW ODOR IMMEDIATELY UPON STARTING THE VEHICLE. THE ODOR IS NAUSEATING AND CAUSES HEADACHES. EVERY TIME THE CAR IS DRIVEN, I HAVE TO TURN ON THE HEAT AND PUT ALL THE WINDOWS DOWN FOR ABOUT 5-10 MINUTES TO GET RID OF THE ODOR. APPARENTLY THERE IS AN ISSUE WITH CONDENSATION FROM THE AC NOT DRAINING PROPERLY. I HAVE BEEN ABLE TO FIND SEVERAL SIMILAR COMPLAINTS ONLINE. SOME DEALERSHIPS CLAIM THEY HAVE NEVER HEARD OF THIS ISSUE, WHILE OTHERS ADMIT THAT THEY ARE AWARE OF IT BUT THAT TOYOTA HAS NO "FIX" FOR IT. BREATHING IN MOLD IS A SAFETY CONCERN. THIS DOES NOT OCCUR IN THE WINTER WHEN AC IS NOT USED.

i. (2014 Toyota Camry 9/22/2015) MY 2014 CAMRY HAS LESS THAN 20,000 MILES ON IT AND I AM ABOUT TO BE ON MY 3RD CABIN FILTER DUE TO A MOLDY SMELL IN MY

CAR. I BOUGHT THIS CAR FOR MY WIFE BRAND NEW AND I HAVE COMPLAINED TO THE DEALERSHIP MULTIPLE TIMES ABOUT THIS ISSUE. THEY HAVE ACCEPTED THE FAULT AND IN APRIL OF THIS YEAR THEY REPLACED THE CABIN FILTER FREE OF CHARGE. LESS THAN 6 MONTHS LATER IT HAS GONE BAD AGAIN, THE CAR SMELLS MOLDLY AND MY CHILD AND WIFE ARE SURROUNDED BY THIS MOLDY SMELL WHENEVER THE A/C IS ON. I HAVE FILED A COMPLAINT WITH TOYOTA WITH THE REQUEST FOR THEM TO BUY-BACK THIS VEHICLE FROM ME AS EVERY OTHER VEHICLE I HAVE OWNED DOESN'T NEED A CABIN FILTER UNTIL 50-60K MILES. TOYOTA HAS ACKNOWLEDGED THIS ISSUE AND FAULT. I WAS ADVISED TO PLACE A COMPLAINT AT THIS TIME HERE SINCE THIS ODOR IS EFFECTING MY FAMILIES HEALTH. TOYOTA HAS BEEN SLOW RETURNING MY CALLS AND HAS ADVISED ME THAT THIS PROCESS WILL TAKE OVER 30 DAYS FROM HERE.

j.   (2014 Toyota Camry 3/28/2015) THERE IS SOMETHING SERIOUSLY WRONG WITH THIS VEHICLE'S AIR CONDITIONING SYSTEM. IT HAS BEEN OMITTING A FOUL, MOLDY, MILDEWY, BAD BO (BODY ODOR), MUSTY, SOUR SMELL SINCE ONLY OWNING THE VEHICLE FOR LESS THAN HALF A YEAR. THIS IS A HUGE SAFETY/HEALTH ISSUE & NEEDS TO BE REMEDIED ASAP. I MYSELF HAVE ALLERGIES & THE SMELL BLOWING OUT FROM THE VENTS ON A DAILY BASIS IS CAUSING ME TO BE VERY SICK. I HAVE TAKEN THE VEHICLE INTO THE DEALERSHIP SEVERAL TIMES & THERE IS NO PERMANENT FIX. IT IS A RECURRENT PROBLEM WITH THIS MANUFACTURER'S VEHICLES & THEY HAVE NOT BOTHERED TO ADDRESS OR REMEDY THE PROBLEM. THERE ARE MANY OTHER OWNERS WITH THE SAME VEHICLE WHO ARE ALSO EXPERIENCING THE SAME PROBLEMS.

k.   (2014 Toyota Camry 11/23/2014) WHEN STARTING VEHICLE AND TURNING ON A/C A VERY FOUL ODOR OF MILDEW AND MOLD COMES FROM THE VENTS. WE HAVE TAKEN IT BACK TO THE DEALERSHIP FOR A CLEANING AND REPLACED THE FILTER WITH A CARBON ONE AT THE DEALERSHIP AT OUR EXPENSE. THIS DID NOT FIX THE ISSUE. WE FOLLOW INSTRUCTIONS OF RUNNING AC IN NON RECIRCULATING MODE TO NO AVAIL. TOYOTA DOES NOT SEEN TO WANT TO TAKE OWNERSHIP OF THE ISSUE. I AM CONCERNED OF OUR HEALTH FROM INHALING THESE MOLD SPORES AND BACTERIA.

51.   Also, complaints posted by consumers in internet forums demonstrate that the defect is widespread.  The complaints also indicate Defendants' awareness of the problems with the HVAC system and how

potentially dangerous the defective condition is for consumers.  The following are some safety complaints relating to the HVAC Defect (spelling and grammar mistakes remain as found in the original) (CarComplaints.com (October 23, 2015), http://www.carcomplaints.com/):

**CarComplaints.com 2012 Toyota Camry – Consumer Reviews**

a. (2012 Toyota Camry) I have been in to the dealer 3x for this problem. The service person can smell the odor but the mechanic's cannot. The first time I went in they said it was full of water that was not draining. The next time I went in they claimed they don't smell anything, yet the opened a ticket with Toyota. The smell has now become unbearable and it is making me sick because I have health issues with my immune system. The smell occurs each time you turn on the a/c, no matter how long it has been sitting. They told me that they have never had this problem before and don't know what to do. When I called Toyota's 800 number the dealer told them they took apart the dash. They are liars.Do you or did you have this problem and did they find a solution. I hate driving my new car.

b. (2012 Toyota Camry) Bad smell from a/c when it is turned on every day. Took to dealer for inspection and told me everything is ok . Gave me an instruction sheet indicating to turn a/c to fresh air mode every day before turning the engine off. Never had this problem before in any other car even in another Camry 2010 that I leased before. I suspect that the problem is water not draining correctly. Will take the car again to get the problem resolved. It's a shame, I was very happy with my prior Camry which was perfect and now I hate this car.

c. (2012 Toyota Camry) ok. I am reporting for the first time however tomorrow will be my second trip to the dealer. Mold smell coming from ac, Toyota does know this is a problem. Don't let them tell you otherwise! The first time I went to dealer they ran some sort of disinfecting solution through the system. This just masks the smell for a short time, if you google "dirty sock syndrome ac" you will find several articles on the subject. It can happen in cars and home ac units. Here in florida we have a three strike lemon law, as noted this will be strike two if they fail to resolve the problem. The only way to fix it is to purge the system, replace the compressor and evaporator coil. Even this sometimes does not fix it. I plan to give the dealer three chances to resolve, I have started a case number with Toyota USA and contacted the Florida Attorney Generals office. They have told me to allow the dealer 3 attempts and if not resolved the dealer will have the option to buy back the car for the total purchase price or give me a new car. DO NOT LET TOYOTA SCREW YOU OVER! IT IS A REPORTED PROBLEM! I have been told Toyota tech. services is working on a solution but as of now no known fix. This means they will delay for as long as possible hoping you will give up. There are hundreds of reported cars with this problem,

and over all it has been reported that 3% of the 2012 model have been lemons for a host of problems. That number is up from <1 % for previous years 0711. Toyota quality? What quality!

d. (2012 Toyota Camry) So I have the foul smell which tarted at 3k miles! I just upgraded from my 2007 to the 2012. I was so happy with my old car, now I am just pissed. My dealer is going to run the A/C cleaner a no charge for my first oil change. This is a band aid for this problem and I am sure it will be back. Dirty Socks smell coming from a brand new car, come on Toyota. I loved my old 2007 and am now about to trade in my brand new car. I have asthma, thids has not effected me yet, but who knows if it will! I am so disappointing in my new car because of this. The last thing I want is the dealer tearing apart my dash and messing with stuff!!! Gonna file my first complaint with Toyota. If this is not fixed in 2 times I will let the attorneys do the talking!!! Good luck folks. I am not happy about this at all, as you may see!!

e. (2012 Toyota Camry) Horrible smell coming out of the vents after starting car before I turn on the AC. Smells like very strong cat pee. The car is garage kept. (2012 Toyota Camry) Bad smell from a/c when it is turned on every day. Took to dealer at least 3 times and the problem is still the same. Given instructions to turn a/c to fresh air mode every day before turning the engine off. Now the smell is coming directly from the fresh air outside. It seems to be a water drying or draining problem based on conversation with service manager. Will take the car again for the 4th time, to get the problem resolved. It's a shame and I am really mad. I was very happy with my prior Toyota and I am really disappointed now.

f. (2012 Toyota Camry) This smell is like mold out of the unit when it is turned on after sitting a while. It is nasty, stale, and most unpleasant. I had a Lexus with the same problem. I believe the parts Toyota and it Lexus division use for HVAC are not right as my mom's Rav4 also gets that moldy smell a lot, she complains.

g. (2012 Toyota Camry) We bought this 2012 Camry at the end of the 2012 year. It only has 8,000 k on it right now, and we have an ongoing issue that Toyota denies having ever seen before, however when we go to the TOYOTA NATION WEBSITE, you can find a HUGE THREAD of complaints about this issues, none of which Toyota seems to be doing a damn thing about!!! THIS CAR which has never been eaten in or smoked in and is showroom spotless in and out, has a HORRID STINK coming from the AC vents! We live in Indiana, keep the car spotless, and are disgusted that when we take the car into the dealership they can acknowledge that they smell the stink, but have not been able to offer a fix . The car sat there for an entire week before they called us to come get it, and had not done one thing to it!!!! We have filed a formal complaint online with the Toyota Corporation, but even this seems to be of no avail and everyone says the same thing, 'WE HAVE NOT SEEN THIS PROBLEM BEFORE" However, I know it is not trueas I said, go to Toyota Nation and see for yourself!!!! This is disgusting and I would love to know

how to get this situation resolved! I did not pay 26,000 dollars for a car that would stink so badly that no one wants to get into it!!!! I would not have even bought a USED car that stunk!!!! What can I do???

h. (2012 Toyota Camry) We bought a 2012 Toyota Camry SE from Stevens Creek Toyota NEW for $27,000. We have always kept it garaged and have it cleaned weekly at the carwash. At around 10,000 miles we started getting a foul smell out of AC and thought we were just crazy because the interior still smells of new car until we start it. Now after several months and extreme discomfort and humiliation we are utterly disgusted that we have bought a car that has such a horrible problem. I can't wait for the lawsuit and will be contacting a lawyer soon to start filing a class action suit against Toyota. So let's all band together and report this problem to the Better Business Bureau. I have only put 1000 miles on my car in the last 10 months due to the horrid smell and discomfort! Toyota should recall all our cars immediately before they lose there tales and get horrible publicity. Tell everyone you know about what horrible products Toyota has and never to buy from them again!

i. (2012 Toyota Camry) Bad odor every time the a/c is turned on. Kids are embarrassed to have their friends ride in the car.

**CarComplaints.com 2013 Toyota Camry – Consumer Reviews**

a. (2013 Toyota Camry) My 2013 Camry started smelling bad (wet sock/wet dog) from the Ac/Heater vents at 13,300 miles. I replaced the cabin filter at my expense at 14,000 miles. The smell is still there. The Asst. Service Mgr. said to turn the car off about 5 to 10 minutes before you reach your destination to dry out the vents. I have driven the car for one more week after replacing the cabin filter and there is no change in the smell. If you turn off the ac and the heater and just let the car run the smell is still there. I think there may be a serious problem that the dealership is not admitting to. I have written the Toyota Motor Corporation about the problem and hope to hear from them shortly.

b. (2013 Toyota Camry) 2013 Toyota Camry-10,000 miles Really bad odor coming from A/C when first start up with air on. Smells like stagnant water. We have just started the process with a Toyota Service Dept. They have had the Camry for a day and a half. Picked it up and will return it two days later to replace Cabin Filter w/Charcoal Cabin Filter. Service Manager said we should try turning the air to vent or off the last 10 minutes of driving so A/C could dry out. Camry has been returned to Toyota Service Department at 5,000 miles for a recall to put a catch pan to keep condensation off air bag wiring. Could the be a drainage problem? Can it be fixed?

c. (2013 Toyota Camry) Moldy odor in the A/C unit. I brought it to the dealer and they have made many excuses. I call the Toyota Motors Company . they tell me they will send a technical professional master , but i have to live without my car overnight

and get my car the next day or evening , Toyota Moto doesn't want to provide a Rent car . they said is my problem. My wife had asthma a long time ago, she'd been able to control it. But, since we have this car and the moldy odor from the ac vent, she started to get sick with asthma attacks. I did tell the situation to Toyota ,they filed the claim, and they canceled because the said i say different versions & they told me I lied . Toyota knows there is a problem with the car but they don't want to take responsibility, They don't care about the Health of every North American. All they want is Money. Is there anybody who can help with this? We need go to Legal advice. I bring my car too many time to the dealer & the cover the problem temporarily, change air filter etc,,,

d.  (2013 Toyota Camry) I am very allergic to mold, so this explains my headaches every morning on my 2 hour commute to work and the lovely 2 hours back. There is a disgusting and very foul scent that emanates from the vents when I turn on the heater or the air conditioning and it has become progressively worse over the last few months. My husband complained about it before our second service at 10K. When we took it in the service manager told us this is a common problem amongst all Toyota vehicles. He said that the drainage system doesn't seem to work very well (which you would think after the myriad of complaints they would find a way to fix this issue - it is disgusting and more disgusting when you spent over $36,000.00 of your hard earned money on a car that people don't want to get in from your law firm because of the awful stench!!).......He said that the condensation from running the heater or AC builds and doesn't drain properly and then begins to build up mold and bacteria. He said "we" meaning my husband and I could go down to Kragen and buy a pine scented spray that would help (NOT).... and I then proceeded to tell him that this wasn't my issue but TOYOTA's and for it to be fixed. They changed the filter and said they ran a FRIGI FRESH anti - bacterial liquid through and that would help. Oh and for me to make sure I press this and that on the air conditioning buttons about 10 minutes from home so that it drains as much as possible and that would help. (I don't think I should have to do ANYTHING at all after 10,000 miles) It's as if there is a dead squirrel in my engine! It's disgusting and its giving me MAJOR headaches due to my allergies). I have filed a complaint with Toyota USA, with the Dublin Toyota where I purchased it. The smell needless to say came back the second time we drove it in the evening after our service. and is back FULLY.

e.  (2013 Toyota Camry) smell and allergens coming from vent wit or without a/c on Toyota sprayed alcohol foam into unit...got rid of mold smell, but not toxic allergens. Cannot drive car without getting ill. August 2, 2013 interior "sanatized" for $70. Mold smell temporarily gone, still makes our eyes water, noses to run, and gives us a sore throat to drive car with windows closed...appears to be allergen.

f.  (2013 Toyota Camry) Wet, moldy smell coming from the air vents, even when off. Took it to the dealership and was told to

turn the AC off on the last minutes of my drive to let the system recover? WHAT? That's sort of an inconvenient under the Florida merciless sun... Love the car, love the space, the drive, everything about it! Except the smell and the possible complications that come with it.

## CarComplaints.com 2013 Toyota Camry – Consumer Reviews

a. (2014 Toyota Camry) We purchased a 2014 Camry in December 2013 and the first summer is when the air conditioning started to blow mildew and musty smell. We complained to the dealership and the technician told my husband to make sure we ran the air conditioning on uncirculated cabin air so the vents would dry out from the moisture of being on max air cabin circulation. Needless to say that has not done anything and I just had my cabin air filter changed last month and it did nothing either. Since I have researched this problem it appears there is a terrible problem with Toyota Camry and also Lexus is having this problem. I have only found a class action lawsuit out of California and no solution on that case that I know of. It appears from everyone else that there is not a fix and Toyota needs to compensate or recall. Anyone else know of a solution that has been met? Before I pay any more money to try and fix a problem that is unfixable, does anyone know of any other law suits on this problem? Since the problem is so dominant in the Toyota Camry I will not buy another Toyota. Very disappointed in my new car, wish I could get rid of it.

b. (2014 Toyota Camry) Same problem with the bad odor coming through the AC/heat vents. It began just before the car turned one year old. Toyota's solution is ridiculous: Run the fresh air only (no A/C) for 15 minutes before you turn the car off. Yeah right! Especially when it's 95 degrees outside and you're running a 10 minute errand. Plus, there is no logical reason that would work. They claim it reduces moisture in the condenser but, when the outside humidity is over 80%, seems like you're only introducing more moisture into the system. We had a cool enough day this week to run only the vent air, without A/C and not on re-circulate. Still smelled when we turned it on. So, I think this problem will only continue, even into heating season. Maybe there is something in the hoses that connect the vents to the blower unit? Right now the odor dissipates after a minute or so but it sounds like this is only going to get worse. I guess we are lucky. Our local dealer did the prescribed clean out of the evaporator, injected some kind of disinfectant and installed a charcoal cabin filter instead of the paper one it comes with. They said they ran it quite a while until the disinfectant odor went away. All of this for no charge. Unfortunately, it didn't help much. They also tried to convince me that the charcoal filter kills bacteria, which is b.s. It is a better odor absorber but it doesn't kill anything. I called to complain again and have not yet heard back. I wish we had known about this before buying the car. We've been loyal to Toyota and haven't bought a brand new car since '93. It might not have been this one. So disappointing to learn they have known about this problem for several years and refuse to do anything about it. Still trying to convince everyone that it is normal for the

A/C system to emit odors.

c. (2014 Toyota Camry) Car has a very strong B.O. type smell coming from the A/C ducts when the recirculate is on. I've sprayed with a duct cleaner and deodorizer but the problem persists.  After taking it into Toyota they suggested that some mud buildup within the wheel wells was likely causing the odor...They recommended I purchase a carbon-type cabin filter for $60 to help (not eliminate) the smell. I've tried dousing the intake at the cabin filter with Lysol but the smell still hasn't improved. I've also checked the drain line but it appears to be free and clear of any buildup. The next step at the dealership, I'm told, is to contact Toyota engineering for a recommended fix. On my invoice a service of 'Foam Flush Evap Coil' was marked as 'Declined by Customer'...this was done by the service manager because it wouldn't be covered by Toyota at this time. Only thing left to do now is use the recirculate less as suggested...

d. (2014 Toyota Camry) Ok now I'm really getting sick of the awful musty, sour, BO smell. Don't even feel like getting in the car anymore. Every time I turn the A/C on it stinks!

e. (2014 Toyota Camry) No surprise the 2014 Camry has the same problem as previous years. Sure wish I had investigated prior to purchase.To have purchased a new car and get this problem so early prior to 7000 miles is totally disgusting. The dealership has changed cabin filter, inserted some solution somewhere and recently sprayed foam in the lines. Then they spray some disgusting perfume that they think will cover the smell. No a happy camper.

52.     The HVAC Defect poses an unreasonable safety risk for Class Members.  Many consumers may suffer from allergies and asthma, which can be triggered or aggravated by the presence of mold and other allergens or bacteria in the Class Vehicles' HVAC system.  For example, the Environmental Protection Agency ("EPA") has stated on its website that the "[p]otential health effects and symptoms associated with mold exposures include allergic reactions, asthma, and other respiratory complaints."  According to the EPA, "the way to control the indoor mold growth is to control moisture" and to fix the "source of the water problem or leak to prevent mold growth."[5]  Moreover, Toyota's admission in its technician's training manual that no permanent mechanical repair exists means

---

[5] Environmental Protection Agency, "Mold Resources," http://www.epa.gov/mold/moldresources.html (last visited February 18, 2015).

that there is no practical way to completely get rid of the mold.  Such a defect poses a safety hazard to the general public and increases health risks to the vehicles' drivers and passengers alike.

**Toyota Has Exclusive Knowledge of the HVAC Defect**

53.    Toyota had superior and exclusive knowledge of the HVAC Defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

54.    Plaintiffs are informed and believe, and based thereon allege, that before Plaintiffs purchased their  Class Vehicles, and since at least 1997, Toyota knew about the HVAC Defect through sources not available to consumers, including: early consumer complaints about the HVAC Defect to Defendants' dealers who are their agents for vehicle repairs; warranty claim data related to the defect; consumer complaints to the NHTSA and resulting notice from NHTSA; early consumer complaints on websites and internet forums; dealership repair orders; testing conducted in response to owner or lessee complaints; TSBs applicable to the Class Vehicles; and other internal sources of aggregate information about the problem.

55.    Defendants have been aware of the HVAC Defect since at least May 9, 1997, before the Class Vehicles were sold, and when the first TSB addressing the issue was released for an identical or substantially similar HVAC system.  On or around May 9, 1997, Defendants issued TSB AC002-97, which addressed "AIR CONDITIONING EVAPORATOR ODOR" in "all models" including the Camry.

56.    Another TSB for an identical or substantially similar HVAC system, "TSB-0261-09," issued in or around August 2009, which addressed "HVAC Odor" in the 2007-2010 Camry, Camry HV, and 2004-2008 Prius vehicles.

57.    Further, Toyota's TSB 0142-13, published on or around

September 18, 2013, covering a variety of vehicles, including, but not limited to, the 2012 Toyota Camry, informed dealers that "Some 2004 - 2014 model year Toyota vehicles may exhibit odors naturally occurring from the HVAC system and/or related environmental factors. Although there is no way to eliminate these odors, follow the General Procedure in this bulletin to minimize the odors experienced."

58.    In addition, a Toyota technician's training manual published in 2005 indicated that "A/C system odors are a common complaint among users, especially after start up."  It goes on to explain that the odors can be caused by "[m]icrobes [i.e., mold] growing on the evaporator surface" that are "small living bacteria . . . carried into the evaporator case [that] grow in the warm, moist environment."  Additionally, it states that there is "**no permanent mechanical repair**" for this issue.

59.    The alleged HVAC Defect was inherent in each Toyota Camry vehicle and was present in each Toyota Camry at the time of sale.

60.    The existence of the HVAC Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle.  Had Plaintiffs and other Class Members known that the Class Vehicles were equipped with defective HVAC systems, they would not have purchased or leased the Class Vehicles or would have paid less for them.

61.    Reasonable consumers, like Plaintiffs, expect that a vehicle's HVAC system is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiffs and Class Members further reasonably expect that Toyota will not sell or lease vehicles with known safety defects, such as the HVAC Defect, and will disclose any such defects to its consumers when it learns of them.  Plaintiffs and Class Members did not expect Toyota to fail to disclose the HVAC Defect to them and to continually deny the defect.

///

**Toyota Has Actively Concealed the HVAC Defect**

62.     While Toyota has been fully aware of the HVAC Defect in the Class Vehicles, it actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease or repair and thereafter.  Specifically, Toyota failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the HVAC systems;

(b)     that the Class Vehicles, including their HVAC systems, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)     that the Class Vehicles and their HVAC systems were defective, despite the fact that Toyota knew of such defects in the HVAC systems through customer complaints, and other internal sources, as early as 1997.

63.     As a result of the HVAC Defect, Toyota was inundated with complaints regarding the Camry's HVAC system.

64.     As a result of the HVAC System defect, Toyota issued multiple Technical Service Bulletins ("TSBs") for an identical or substantially similar HVAC system to its dealers in the United States, acknowledging defects in the HVAC system and attempting to address the issue.  For example, on or about May 9, 1997, as a result of the HVAC Defect, Toyota issued TSB AC002-97 to its dealers in the United States, acknowledging to its dealers that the HVAC system and its associated parts for "all models," including the Camry, were defective and malfunctioning.  The TSB, titled "AIR CONDITIONING EVAPORATOR ODOR," informs dealers that a "musty odor may be emitted from the air conditioning system of some vehicles," and one reason for this odor

1   is from "[m]icrobial growth in the evaporator, arising from dampness in the

2   evaporator housing where the cooling air flow is dehumidified."  However, on

3   information and belief, consumers continued to experience problems with their

4   vehicles despite the fix, including, but not limited to, emissions of noxious and

5   foul odors from and mold growth in the HVAC system.

6       65.    Additionally, on or about August 2009, Toyota released yet another

7   TSB, TSB-0261-09, to its dealers in the United States, titled "HVAC Odor,"

8   once again acknowledging that the HVAC system and its associated parts for

9   2007-2010 Camry, Camry HV and 2004-2008 Prius vehicles were defective and

10  malfunctioning.  However, on information and belief, consumers continued to

11  experience problems with their vehicles despite the fix, including, but not limited

12  to, emissions of noxious and foul odors from and mold growth in the HVAC

13  system.

14      66.    Further, Toyota's TSB 0142-13, published on or around

15  September 18, 2013, covering a variety of vehicles, including, but not limited to,

16  the 2012 Toyota Camry, informed dealers that "Some 2004 - 2014 model year

17  Toyota vehicles may exhibit odors naturally occurring from the HVAC system

18  and/or related environmental factors.  Although there is no way to eliminate

19  these odors, follow the General Procedure in this bulletin to minimize the odors

20  experienced."  However, on information and belief, consumers continued to

21  experience problems with their vehicles despite the fix, including, but not limited

22  to, emissions of noxious and foul odors from and mold growth in the HVAC

23  system.

24      67.    On information and belief, Toyota was unable to pinpoint the cause

25  of these HVAC issues and thus continued to issue TSBs for various components

26  in the HVAC system.  Specifically, on or about December 2005, Toyota

27  informed its service technicians in a Toyota technicians' manual that "A/C

28  system odors are a common complaint among users, especially after start up."  It

1   goes on to explain that the odors can be caused by "[m]icrobes [i.e., mold]

2   growing on the evaporator surface" that are "small living bacteria . . . carried

3   into the evaporator case [that] grow in the warm, moist environment."

4   Additionally, it states that there is "**no permanent mechanical repair**" for this

5   issue.

6       68.     Despite notice of the defect from numerous consumer complaints

7   and dealership repair orders, Toyota has not recalled the Class Vehicles to repair

8   the HVAC Defect, has not offered their customers a suitable repair or

9   replacement free of charge, and has not offered to reimburse the Class Vehicles'

10  owners and leaseholders in full for the costs they incurred in diagnosing and

11  repairing the HVAC Defect.

12      69.     On information and belief, the TSBs and recalls outlined above have

13  been ineffective at addressing the HVAC Defect.

14      70.     When consumers present the Class Vehicles to an authorized Toyota

15  dealer for repair of the HVAC system, consumers are typically told they must

16  pay for the repair.  On information and belief, whether or not consumers are

17  forced to pay for the repair, the same defective part or parts are used to replace

18  the prior defective part or parts.

19      71.     To this day, Toyota still has not notified Plaintiffs and Class

20  Members that the Class Vehicles suffer from a systemic defect that causes the

21  HVAC system to malfunction.

22      72.     On information and belief, Toyota has caused Plaintiffs and Class

23  Members to expend money at its dealerships to diagnose, repair, or replace the

24  Class Vehicles' HVAC systems or related components, despite Toyota's

25  knowledge of the HVAC Defect.

26                 **TOLLING OF THE STATUTE OF LIMITATIONS**

27      73.     Because the defects in the design or manufacturer of the Class

28  Vehicles and their HVAC system cannot be detected until the defect manifests

1  itself, Plaintiffs and Class Members were not reasonably able to discover the
2  problem until after purchasing or leasing the Class Vehicles, despite their
3  exercise of due diligence.

4      74.    Plaintiffs and Class Members had no realistic ability to discern that
5  the HVAC system was defective until it prematurely failed, and would have no
6  reason to believe that problems they encountered were caused by a widespread,
7  systemic defect.  Therefore, the discovery rule is applicable to the claims
8  asserted by Plaintiffs and Class Members.

9      75.    Plaintiffs are informed and believe and based thereon allege that
10  Toyota knew HVAC Defect since 1997, if not earlier, and has concealed from or
11  failed to alert owners and lessees of the Class Vehicles of the defective nature of
12  their HVAC system.

13      76.    Any applicable statute of limitation has therefore been tolled by
14  Toyota's knowledge, active concealment, and denial of the facts alleged herein.
15  Toyota is further estopped from relying on any statute of limitation because of its
16  concealment of the defective nature of the Class Vehicles and their HVAC
17  system.

18                    **CLASS ACTION ALLEGATIONS**

19      77.    Plaintiffs bring this lawsuit as a class action on behalf of themselves
20  and all others similarly situated as members of the proposed Plaintiff Classes
21  pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3).
22  This action satisfies the numerosity, commonality, typicality, adequacy,
23  predominance, and superiority requirements of those provisions.

24      78.    The Class and Sub-Class are defined as:

25          **Class**:   All individuals residing in the United States
            who purchased or leased any Toyota Camry XV50
26          model vehicle.

27          **CLRA Sub-Class**:   All members of the Class who are
            "consumers" within the meaning of California Civil
28          Code § 1761(d).

1

2

**Implied Warranty Sub-Class**:   All members of the Class who purchased or leased their vehicles in the State of California.

3   79.   Excluded from the Class and Sub-Classes are: (1) Defendants, any

4   entity or division in which Defendants have a controlling interest, and their legal

5   representatives, officers, directors, assigns, and successors; (2) the Judge to

6   whom this case is assigned and the Judge's staff; (3) any Judge sitting in the

7   presiding state and/or federal court system who may hear an appeal of any

8   judgment entered; and (4) those persons who have suffered personal injuries as a

9   result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class

10   and Sub-Class definitions if discovery and further investigation reveal that the

11   Class and Sub-Classes should be expanded or otherwise modified.

12   80.   There is a well-defined community of interest in the litigation and

13   each subclass is readily ascertainable.

14   81.   Numerosity: Although the exact number of prospective class

15   members is uncertain and can only be ascertained through appropriate discovery,

16   the number is great enough such that joinder is impracticable.  The disposition of

17   prospective class members' claims in a single action will provide substantial

18   benefits to all parties and to the Court.  The prospective class members are

19   readily identifiable from information and records in Defendants' possession,

20   custody, or control, as well as from records kept by the departments of motor

21   vehicles of the various states.

22   82.   Typicality: The claims of the representative Plaintiffs are typical of

23   the claims of the all prospective class members in that the representative

24   Plaintiffs and the prospective class members purchased and/or leased a Class

25   Vehicle designed, manufactured, and distributed by Toyota.  The representative

26   Plaintiffs, like all prospective class members, have been damaged by

27   Defendants' misconduct in that they have incurred or will incur the cost of

28   repairing or replacing the defective HVAC system.  Furthermore, the factual

bases of Toyota's misconduct are common to all prospective class members and represent a common thread resulting in injury to all prospective class members.

83.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and the prospective class members that predominate over any question affecting individual prospective class members.  These common legal and factual issues include the following:

(a)   Whether Class Vehicles contain defects relating to the HVAC system;

(b)   Whether the defects relating to the HVAC system constitute an unreasonable safety risk;

(c)   Whether Defendants knew about the defects relating to the HVAC system and, if so, how long Defendants have known of the defect;

(d)   Whether the defective nature of the HVAC system constitutes a material fact;

(e)   Whether Defendants have a duty to disclose the defective nature of the HVAC system to Plaintiffs and prospective class members;

(f)   Whether Plaintiffs and the prospective class members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(g)   Whether Defendants knew or reasonably should have known of the defects relating to the HVAC system before it sold and leased Class Vehicles to prospective class members;

(h)   Whether Defendants should be declared financially responsible for notifying all prospective class members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective HVAC

system;

(i) Whether Defendants are obligated to inform prospective class members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective HVAC system; and

(j) Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act.

84. <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect prospective class members' interests.  Plaintiffs have retained attorneys experienced in prosecuting class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

85. <u>Predominance and Superiority:</u> Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

86. In the alternative, the Class may be certified because

(a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying

adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Toyota;

(b)     the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     Toyota has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

## (Violation of California's Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*)

87.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the CLRA Sub-Class.

89.     Defendants are "person(s)" as defined by California Civil Code § 1761(c).

90.     Plaintiffs and CLRA Sub-Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

91.     By failing to disclose and concealing the defective nature of the HVAC system from Plaintiffs and prospective Class Members, Defendants violated California Civil Code § 1770(a), as it represented that the Class

Vehicles and their HVAC systems had characteristics and benefits that they do not have, and represented that the Class Vehicles and their HVAC systems were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

92.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a safety risk on the public.

93.    Defendants knew that the Class Vehicles and their HVAC systems suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

94.    As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the HVAC Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that repair or replacement of the Class Vehicles' HVAC components is substantially certain to fail to resolve the odor or mold issues and, thus, the HVAC system will require repair or replacement perpetually.

95.    Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the HVAC system and/or the associated repair costs because:

(a)    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' HVAC systems;

(b)    Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their HVAC systems had a noxious and un-repairable safety defect until it manifested;

and

(c)      Defendants knew that Plaintiffs and Class Members could not
reasonably have been expected to learn of or discover the
safety defect.

96.     In failing to disclose the defective nature of the HVAC system,
Defendants knowingly and intentionally concealed material facts and breached
their duty not to do so.

97.     The facts Defendants concealed from or failed to disclose to
Plaintiffs and Class Members are material in that a reasonable consumer would
have considered them to be important in deciding whether to purchase or lease
the Class Vehicles or pay less.  Had Plaintiffs and Class Members known that the
Class Vehicles' HVAC systems were defective, they would not have purchased
or leased the Class Vehicles or would have paid less for them.

98.     Plaintiffs and Class Members are reasonable consumers who do not
expect the HVAC system installed in their vehicles to exhibit problems such as
contamination, mold growth and the emissions of foul and noxious odors.  This
is the reasonable and objective consumer expectation relating to vehicle HVAC
systems.

99.     As a result of Defendants' conduct, Plaintiffs and Class Members
were harmed and suffered actual damages in that, on information and belief, the
Class Vehicles experienced and may continue to experience problems such as the
HVAC system becoming contaminated, growing mold and emitting foul and
noxious odors, which are unable to be permanently repaired.

100.   As a direct and proximate result of Defendants' unfair or deceptive
acts or practices, Plaintiffs and Class Members suffered and will continue to
suffer actual damages.

101.   Plaintiffs and the Class are entitled to equitable relief.

102.   Plaintiffs provided Defendants with notice of their violations of the

1  CLRA pursuant to California Civil Code § 1782(a).  Defendants failed to provide

2  appropriate relief for their violations of the CLRA.  Therefore, Plaintiffs now

3  seek monetary, compensatory, and punitive damages, in addition to injunctive

4  and equitable relief.

5                              **SECOND CAUSE OF ACTION**

6      **(Violation of California Business & Professions Code § 17200, *et seq.*)**

7          103.   Plaintiffs incorporate by reference the allegations contained in the

8  preceding paragraphs of this Complaint.

9          104.   Plaintiffs bring this cause of action on behalf of themselves and on

10  behalf of the Class.

11          105.   As a result of their reliance on Defendants' omissions and/or

12  misrepresentations, owners and/or lessees of the Class Vehicles suffered an

13  ascertainable loss of money, property, and/or value of their Class Vehicles.

14  Additionally, as a result of the HVAC Defect, Plaintiffs and Class Members were

15  harmed and suffered actual damages in that repair or replacement of the Class

16  Vehicles' HVAC components is substantially certain to fail to resolve the odor

17  issue and, thus, the HVAC system will require repair or replacement perpetually.

18          106.   California Business & Professions Code § 17200 prohibits acts of

19  "unfair competition," including any "unlawful, unfair or fraudulent business act

20  or practice" and "unfair, deceptive, untrue or misleading advertising."

21          107.   Plaintiffs and Class Members are reasonable consumers who do not

22  expect their HVAC systems to exhibit problems such as emissions of foul and

23  noxious odors, contamination and mold growth.

24          108.   Defendants knew the Class Vehicles and their HVAC systems

25  suffered from inherent defects, were defectively designed or manufactured, and

26  were not suitable for their intended use.

27          109.   In failing to disclose the defects with the HVAC system, Defendants

28  have knowingly and intentionally concealed material facts and breached their

1  duty not to do so.

2      110.   Defendants were under a duty to Plaintiffs and Class Members to

3  disclose the defective nature of the Class Vehicles and their HVAC system:

4          (a)    Defendants were in a superior position to know the true state

5                 of facts about the safety defect in the Class Vehicles' HVAC

6                 systems;

7          (b)    Defendants made partial disclosures about the quality of the

8                 Class Vehicles without revealing the defective nature of the

9                 Class Vehicles and their HVAC systems; and

10         (c)    Defendants actively concealed the defective nature of the

11                Class Vehicles and their HVAC systems from Plaintiffs and

12                the Class.

13     111.   The facts Defendants concealed from or did not disclose to Plaintiffs

14  and Class Members are material in that a reasonable person would have

15  considered them to be important in deciding whether to purchase or lease Class

16  Vehicles.  Had Plaintiffs and other Class Members known that the Class

17  Vehicles' HVAC systems were defective and posed a safety hazard, then

18  Plaintiffs and the other Class Members would not have purchased or leased Class

19  Vehicles equipped with the HVAC system, or would have paid less for them.

20     112.   Defendants continued to conceal the defective nature of the Class

21  Vehicles and their HVAC systems even after Class Members began to report

22  problems.  Indeed, Defendants continues to cover up and conceal the true nature

23  of the problem.

24     113.   Defendants' conduct was and is likely to deceive consumers.

25     114.   Defendants' acts, conduct and practices were unlawful, in that they

26  constituted:

27         (a)    Violations of the California Consumer Legal Remedies Act;

28                and

CLASS ACTION COMPLAINT

(b)     Violations of the Song-Beverly Consumer Warranty Act.

(c)     Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)

115.   By their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

116.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

117.   As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

118.   Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

### THIRD CAUSE OF ACTION

### (Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)

119.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

120.   Plaintiffs bring this cause of action against Defendants on behalf of themselves and on behalf of the members of the Implied Warranty Sub-Class.

121.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

122.   Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing

1   reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

2   and their HVAC systems suffered from an inherent defect at the time of sale and

3   thereafter are not fit for their particular purpose of providing safe and reliable

4   transportation.

5        123.   Defendants impliedly warranted that the Class Vehicles were of

6   merchantable quality and fit for such use.  This implied warranty included,

7   among other things:  (i) a warranty that the Class Vehicles and their HVAC

8   systems were manufactured, supplied, distributed, and/or sold by Toyota were

9   safe and reliable for providing transportation; and (ii) a warranty that the Class

10  Vehicles and their HVAC systems would be fit for their intended use while the

11  Class Vehicles were being operated.

12       124.   Contrary to the applicable implied warranties, the Class Vehicles

13  and their HVAC systems at the time of sale and thereafter were not fit for their

14  ordinary and intended purpose of providing Plaintiffs and Class Members with

15  reliable, durable, and safe transportation.  Instead, the Class Vehicles are

16  defective, including, but not limited to, the defective design and manufacture of

17  their HVAC systems.

18       125.   As a result of Defendants' breach of the applicable implied

19  warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

20  loss of money, property, and/or value of their Class Vehicles.  Additionally, as a

21  result of the HVAC Defect, Plaintiffs and Class Members were harmed and

22  suffered actual damages in that repair or replacement of the Class Vehicles'

23  HVAC components is substantially certain to fail to resolve the odor issue and,

24  thus, the HVAC system will require repair or replacement perpetually.

25       126.   Defendants' actions, as complained of herein, breached the implied

26  warranty that the Class Vehicles were of merchantable quality and fit for such

27  use in violation of California Civil Code §§ 1792 and 1791.1.

28

**FOURTH CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.)**

127.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

128.   Plaintiffs bring this cause of action on behalf of themselves and on behalf all Class Members against Defendant.

129.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

130.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

131.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).  Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their HVAC systems were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their HVAC systems would be fit for their intended use while the Class Vehicles were being operated.

132.   Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their HVAC systems.

133.   Defendant's breach of implied warranty has deprived Plaintiffs and Class Members of the benefit of their bargain.

134.   The amount in controversy of Plaintiffs' individual claims meets or

1    exceeds the sum or value of $25,000.  In addition, the amount in controversy

2    meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

3    computed on the basis of all claims to be determined in this suit.

4        135.   The alleged HVAC Defect was inherent in each Class Vehicle and

5    was present in each Class Vehicle at the time of sale.

6        136.   Upon information and belief, Defendants have been afforded a

7    reasonable opportunity to cure their breaches, including when owners and lessees

8    of the Class Vehicles brought their vehicles in for diagnoses and repair of the

9    Class Vehicles.

10       137.   As a direct and proximate cause of Defendants' breach of implied

11   warranty, Plaintiffs and Class Members sustained damages and other losses in an

12   amount to be determined at trial.  Defendants' conduct damaged Plaintiffs and

13   Class Members, who are entitled to recover actual damages, consequential

14   damages, specific performance, diminution in value, costs, attorneys' fees,

15   and/or other relief as appropriate.

16       138.   As a result of Defendants' violations of the Magnuson-Moss

17   Warranty Act as alleged herein, Plaintiffs and Class Members have incurred

18   damages.

## FIFTH CAUSE OF ACTION
### (For Unjust Enrichment)

21       139.   Plaintiffs incorporate by reference the allegations contained in the

22   preceding paragraphs of this Complaint.

23       140.   Plaintiffs bring this cause of action on behalf of themselves and on

24   behalf of the Class Members against Defendants.

25       141.   As a direct and proximate result of Defendants' failure to disclose

26   known defects and material misrepresentations regarding known defects,

27   Defendants have profited through the sale and lease of said vehicles.  Although

28   these vehicles are purchased through Defendants' agents, the money from the

1    vehicle sales flows directly back to Defendants.

2         142.   Additionally, as a direct and proximate result of Defendants' failure

3    to disclose known defects and material misrepresentations regarding known

4    defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that

5    require repeated repairs that can and therefore have conferred an unjust

6    substantial benefit upon Defendants.

7         143.   Defendants have therefore been unjustly enriched due to the known

8    defects in the Class Vehicles through the use of funds that earned interest or

9    otherwise added to Defendants' profits when said money should have remained

10   with Plaintiffs and Class Members.

11        144.   As a result of the Defendants' unjust enrichment, Plaintiffs and

12   Class Members have suffered damages.

13                        **RELIEF REQUESTED**

14        145.   Plaintiffs, on behalf of themselves and all others similarly situated,

15   request the Court to enter judgment against Defendants, as follows:

16             (a)   An order certifying the proposed Class and Sub-Class,

17                   designating Plaintiffs as named representatives of the Class,

18                   and designating the undersigned as Class Counsel;

19             (b)   A declaration that Defendants are financially responsible for

20                   notifying all Class Members about the defective nature of the

21                   HVAC system, including the need for periodic maintenance;

22             (c)   An order enjoining Defendants from further deceptive

23                   distribution, sales, and lease practices with respect to Class

24                   Vehicles, and to remove and replace Plaintiffs and Class

25                   Members' HVAC systems with a suitable alternative product;

26                   enjoining Defendants from selling the Class Vehicles with the

27                   misleading information; compelling Defendants to provide

28                   Class members with a replacement HVAC system that does

CLASS ACTION COMPLAINT

1    not contain the defects alleged herein; and/or compelling

2    Defendants to reform their manufacturer's warranty, in a

3    manner deemed to be appropriate by the Court, to cover the

4    injury alleged and to notify all Class Members that such

5    manufacturer's warranty has been reformed;

6    (d)    A declaration requiring Defendants to comply with the

7    various provisions of the Song-Beverly Act alleged herein and

8    to make all the required disclosures;

9    (e)    An award to Plaintiffs and the Class for compensatory,

10    exemplary, and statutory damages, including interest, in an

11    amount to be proven at trial;

12    (f)    Any and all remedies provided pursuant to the Song-Beverly

13    Act, including California Civil Code section 1794;

14    (g)    A declaration that Defendants must disgorge, for the benefit

15    of the Class, all or part of the ill-gotten profits they received

16    from the sale or lease of their Class Vehicles, or make full

17    restitution to Plaintiffs and Class Members;

18    (h)    An award of attorneys' fees and costs, as allowed by law;

19    (i)    An award of attorneys' fees and costs pursuant to California

20    Code of Civil Procedure § 1021.5;

21    (j)    An award of pre-judgment and post-judgment interest, as

22    provided by law;

23    (k)    Leave to amend the Complaint to conform to the evidence

24    produced at trial; and

25    (l)    Such other relief as may be appropriate under the

26    circumstances.

27

28    ///

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2        146.   Plaintiffs demand a trial by jury of any and all issues in this action

3  so triable.

4

5  Dated: November 4, 2015                    Respectfully submitted,

6                                             Capstone Law APC

7

8                                      By:  /s/ Jordan L. Lurie

9                                             Jordan L. Lurie
                                              Robert Friedl
                                              Tarek H. Zohdy
10                                            Cody R. Padgett

11                                            Attorneys for Plaintiffs Alfred Salas and
                                              Gloria Ortega
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28